# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

LANCE J. LINKHART,                          Case No. 1:13-cv-288

           Plaintiff,                                       Bowman, M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Lance J. Linkhart filed this Social Security appeal in order to challenge the Defendant's finding that he was not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review.[1] As explained below, the ALJ's finding is AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") in December 2009, alleging that he became unable to work as of December 1, 2005, due to a combination of physical and mental health issues. Plaintiff's applications were denied initially and upon reconsideration, and he timely requested an evidentiary hearing.

On November 8, 2011, Plaintiff and his mother appeared and testified at an evidentiary hearing held before Administrative Law Judge ("ALJ") Kristen King in Cincinnati, Ohio. An impartial vocational expert also appeared and testified. On

---

[1] The parties have consented to final disposition by the undersigned magistrate judge, pursuant to 28 U.S.C. §636(c).

January 25, 2012, the ALJ issued an unfavorable written decision. (Tr. 19-33). She determined that Plaintiff has the following severe impairments: "personality disorder, bipolar disorder, obesity, migraine headaches, history of substance abuse." (Tr. 22). However, she held that Plaintiff does not have an impairment or combination of impairments that would meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appx. 1. (*Id.*). Instead, she found that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> No climbing of ladders, ropes or scaffolds, no use of dangerous moving machinery, and no exposure to unprotected heights. He is also limited to simple, routine and repetitive tasks, no direct work with the public, but can be around the public on a superficial basis up to 15% of the workday, occasional interaction with coworkers and supervisors, but no tandem tasks, no more than occasional changes in the work setting, no production rate paced work, such as machine driven pace or automated assembly line positions, but rather work that is goal directed.

(Tr. 24). The ALJ determined that the referenced RFC precluded Plaintiff's past relevant work as a nursing assistant, home attendant, or material handler. (Tr. 31). However, based upon testimony from the VE and the record as a whole, she determined that Plaintiff could still perform jobs that exist in significant numbers in the national economy, including such representative jobs as packager (hand), crate liner, and cleaner. (Tr. 32). The Appeals Council denied Plaintiff's request for further review; therefore, the ALJ's decision remains as the final decision of the Commissioner.

Plaintiff was 20 years old on his disability onset date, and remained in the "younger individual" category at the time of the ALJ's decision. He has a high school education, having completed his G.E.D., and earned a Nurse Aide license. (Tr. 30, 646). Plaintiff claims that he is disabled due to mental illness, primarily bipolar disorder.

He does not contest the ALJ's findings regarding his physical impairments in this appeal. Importantly, he also does not challenge the ALJ's adverse credibility determination. Rather, he argues that remand is required because the ALJ improperly rejected the opinions of Plaintiff's treating Advanced Practice Nurse, Christopher Heather, and improperly gave too much weight to the opinions of two consulting medical sources.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

3

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.  A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. §404.1512(a).

**B.  Specific Errors**

**1.  Bias or Prejudice**

While not listed as a separate claim of error, Plaintiff suggests that the ALJ's decision in this case may reflect undue bias or prejudice.  He argues that the adverse decision "may be a consequence of claimant's unsympathetic circumstances," to the

4

extent that Plaintiff "is a troubled young man who inherited bad mental illnesses that contribute to distasteful behavior" with "symptoms [that] are unattractive," which "compound[] the other unpleasant aspects of his circumstances." (Doc. 11 at 2). However, there is no hint in the ALJ's decision of Plaintiff's allegedly "unsympathetic circumstances" or "distasteful behavior," other than a reference to the common impairment of chronic substance abuse. Although there are more references to Plaintiff's criminal history in the hearing transcript, most of that testimony was elicited by Plaintiff's own counsel. Based on a review of the transcript and the record as a whole, the Court finds no evidence of bias or prejudice. To the contrary, the ALJ repeatedly praised Plaintiff during the hearing for giving up drugs and alcohol, and for taking action to improve his diet and lose weight.

### 2. Weight Given to Medical Opinions of Nurse Christopher Heather

Plaintiff's main assertion of error is that the ALJ rejected the opinions of Nurse Christopher Heather, DNP, APN. Plaintiff treated with Nurse Heather from March 2010 through December 2011 at the Mental Health & Recovery Center ("MHRC").[2] Nurse Heather's credentials reflect that he holds a "Doctorate of Nursing Practice," which the American Association of Colleges of Nursing endorsed in 2004 as the preferred level of preparation necessary for advanced nursing practice. *See* http://www.aacn.nche.edu/dnp/faqs, accessed on March 17, 2014. As a DPN, Plaintiff asserts, without contradiction from Defendant, that Nurse Heather functionally served in the role of a psychiatrist on Plaintiff's treatment team with MHRC, monitoring Plaintiff's

---

[2]As Plaintiff notes, late in 2011 MHRC began operating under a new name, Solutions Community Counseling & Recovery Centers ("SCCRC"). (Tr. 648). However, because all providers remained the same and the exhibits in the administrative record are all labeled "MHRC," the Court will refer to the agency by its original initials.

5

symptoms and prescribing medications for his psychiatric conditions approximately every three months.[3] Plaintiff did not see a traditional psychiatrist.

Nurse Heather first offered opinions in a Medical Impairment Questionnaire dated January 2011. (Tr. 460-464). In that document, he noted Plaintiff's history of mood swings and anger issues, and opined that Plaintiff had only a "fair" prognosis despite being "sober" from marijuana for a year, and from ecstasy and cocaine for 2 years. (Tr. 461). Somewhat inconsistently given Plaintiff's alleged sobriety, he stated that it was <u>not</u> possible to separate the mental restrictions and limitations imposed by Plaintiff's drug or alcohol abuse from those caused by Plaintiff's mental disorders alone. (Tr. 462). Regardless, he concluded that Plaintiff was "unable to meet competitive standards" in nine different work-related areas. (Tr. 462).

When a claimant has a mental impairment, the ALJ must rate the degree of functional limitation in four broad areas commonly known as the "B criteria" in order to evaluate whether he meets or equals a Listing. See *Rabbers v. Com'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). Despite stating that Plaintiff lacked the ability to meet competitive work standards, Nurse Heather opined that, in terms of the B criteria, Plaintiff's overall functional limitations were much less severe. He indicated that Plaintiff was only "moderately" impaired in the areas of maintaining social functioning and in concentration, persistence or pace, and not impaired at all, or only mildly impaired, in activities of daily living. (Tr. 462). Curiously, he also opined that Plaintiff had experienced three separate episodes of decompensation in the prior 12-month period,

---

[3]Plaintiff refers to Nurse Heather as "Dr. Heather." With no disrespect, the Court uses the phrase "Nurse Heather" to reflect the regulatory distinction made between an acceptable medical source who holds a doctorate, and someone who may have a Ph.D. or practicing doctorate (like a Nurse Practitioner, physical therapist, or audiologist), but who is not recognized as an acceptable medical source.

lasting more than two weeks in duration. (Tr. 463). Contrary to that opinion, there is no evidence that the Plaintiff has ever been hospitalized for psychiatric reasons, much less on three separate occasions for more than two weeks. *See generally Rabbers*, 582 F.3d at 659 (defining repeated episodes of decompensation of extended duration as requiring extended hospitalization, quoting 20 C.F.R. pt. 404, subpt. P., app. 1, §12.00(C)(4)). The ALJ found "no episodes of decompensation, which have been of extended duration." (Tr. 24).

Nurse Heather also believed that Plaintiff separately met the "C" criteria for a Listed mental impairment, stating that Plaintiff showed a documented history of a psychotic or affective disorder of more than 2 years' duration with repeated episodes of decompensation. Again, there is no evidence of record of repeated episodes of decompensation. Nurse Heather stated that Plaintiff's illness was of such severity that "even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," and that his history reflected an "inability to function outside a highly supportive living arrangement," plus a "complete inability to function independently outside the area of one's home." (Tr. 463). As with the opinion on episodes of decompensation, there appears to be no evidentiary support for any of the latter opinions. The ALJ found the evidence did not establish the paragraph C criteria. (Tr. 24).

In response to an inquiry from counsel, Nurse Heather reaffirmed his opinions in November 2011. (Tr. 667-671). In that questionnaire, Nurse Heather is advised that he was mistaken in his January 2011 statement about Plaintiff's sobriety, given

evidence that Plaintiff continued drinking through at least April 2011,[4] and smoked marijuana through June 2011. (Tr. 669). Nurse Heather states that the new information would not alter his opinions other than the addition of a "dual diagnosis" for substance abuse. However, he also states that, based upon his treatment of Plaintiff, he no longer believed "the patient 'is as mentally ill' as I initially thought," but instead that "[m]uch of his illness (problems) are RT chronic substance abuse, and very poor coping skills." (Tr. 670). In response to an inquiry as to whether clinical notes reflecting a "stable" mood and "well organized" thoughts were indicative of increased functional capacity to do full-time work, Nurse Heather did not directly respond. Instead, he states simply that Plaintiff is compliant with his medications, and "seems <u>well managed</u> with medication." (Tr. 671, emphasis added).

Nurse Heather also completed two forms for Juvenile and Family Services ("JFS"). (Tr. 674-676). The first form, dated 12/5/11, states little more than that Plaintiff is dependent on medications for management of his mental illness. (Tr. 674). The second "Mental Functional Capacity Assessment" form is undated, but opines that Plaintiff is "unemployable" and "still not stable," with a mental impairment expected to last between 9 and 11 months. (Tr. 675). It is noteworthy that the reference to Plaintiff being "still not stable" is inconsistent with clinical notes that repeatedly refer to Plaintiff as "stable," as well as Nurse Heather's November 2011 assessment.

---

[4] The record reflects that Plaintiff had consumed alcohol as recently as May or June, 2011. (Tr. 25, 27, 29).

Had Nurse Heather's most extreme opinions been accepted, Plaintiff would have been found to be disabled. However, the ALJ gave those opinions "no weight," reasoning as follows:

> …Christopher J. Heather, APN, opined, after treating the claimant for only ninety days, that the claimant would have limited but satisfactory ability to remember work like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions and maintain attention for two-hour segments. …No to mild limits in daily activities, moderate limits in social functioning and maintaining concentration, pace or persistence, and three episodes of decompensation was assessed. He opined that claimant would likely be absent two days a month. Impulse control issues leading to unprovoked anger on others were also noted. …Nurse Heather, wrote in November 2011 that he did not believe the claimant, "is as mentally ill" as he initially thought. Much of his illnesses (problems) are RT chronic substance abuse, and very poor coping skills. He wrote that the claimant has a severe mood disorder. He seems well managed with medication. [Nurse Heather] clarified that the terms "very stable" and "is doing well" …mean that the claimant is "as good as it will get" and means he is not a suicide risk or needing more intensive care….The undersigned gives Nurse Heather's opinion no weight as it is not consistent with treatment notes, which show the claimant reported improvement with medication….Mental status examinations have revealed him to be cooperative, pleasant, alert and oriented. His moods were stable and his thoughts were well organized…. It is noted that Nurse Heather is not an "acceptable medical source" under the applicable regulations. Therefore, his opinion must be evaluated under the rules applicable to "other sources" found in 20 CFR 416.913 and 404.1513. The undersigned has given more weight to the opinion of Dr. Bruce Goldsmith, PhD, who evaluated the claimant for the state agency…. This opinion is consistent with the evidence as discussed above.

(Tr. 31).

Plaintiff correctly points out that the ALJ erred by stating that Heather had treated Plaintiff for "only ninety days." In fact, Nurse Heather had treated Plaintiff for 10 months, at intervals spaced approximately 90 days apart. However, this relatively minor factual error provides no basis for remand in the context of the record as a whole.

9

Plaintiff concedes that Nurse Heather cannot be considered under applicable social security regulations to be an "acceptable medical source." Because he is not an "acceptable medical source," the opinions of Nurse Heather were not entitled to the "controlling weight" presumption that is given to treating sources. In general, only someone possessing a doctorate of medicine (M.D. or D.O.), or a doctorate of psychology (Ph.D. or Psy.D.), can be considered to be a treating source.[5] As neither a treating source nor an acceptable medical source, the opinions of Nurse Heather are evaluated as an "other source." *See* 20 C.F.R. §§404.1513, 416.913, 404.1527, 416.927; *see also* SSR 06-03p, 2006 WL 2329939.

Plaintiff argues that the ALJ erred by failing to comply with SSR 06-03p, which ruling states:

> …[M]edical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Titles II & Xvi:II & Xvi: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies*, SSR 06-03P, 2006 WL 2329939 (S.S.A Aug. 9, 2006). SSR 06-03p lists factors to be considered when reviewing such opinions as including, but not limited to:

---

[5]In some circumstances not relevant here, an optometrist, podiatrist or speech-language pathologist may also be deemed an acceptable medical source.

10

> • How long the source has known and how frequently the source has seen the individual;
> • How consistent the opinion is with other evidence;
> • The degree to which the source presents relevant evidence to support an opinion;
> • How well the source explains the opinion;
> • Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
> • Any other factors that tend to support or refute the opinion.

*Id.* However, SSR 06-03p makes clear that "[n]ot every factor for weighing opinion evidence will apply in every case" and that the evaluation of such opinions will depend "on the particular facts in each case." *Id.*

Here, the ALJ gave greater weight to the opinions of two consultants who were both acceptable medical sources. The ruling expressly permits this: "[T]hat a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because …'acceptable medical sources' 'are the most qualified health care professionals.'" *Id.* It is true that the ruling *permits* an ALJ to give greater weight to an opinion from a nurse or similar source if circumstances justify that decision, such as when "he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.* But under no circumstances does the ruling mandate that the most weight be given to someone who is not an acceptable medical source. In short, SSR 06-03p provides guidance, but does not eliminate an ALJ's discretionary "zone of choice" in deciding the weight to be given to opinion evidence.

Plaintiff complains that on the record presented, the ALJ failed to adequately explain her decision to give no weight to Nurse Heather's opinions. SSR 06-03p states:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at **4-6.

Reviewing the ALJ's analysis here, the Court finds no reversible error. Plaintiff's arguments that the ALJ should have given greater weight to Nurse Heather's opinions, based upon the fact that he treated Plaintiff eight times, amount to no more than a difference of opinion. Plaintiff argues that Nurse Heather's opinions are "unbiased" based upon his assessment that Plaintiff did not meet the "B" criteria for a Listed mental impairment and because Nurse Heather stated that "Patient [is] willing to work (low-stress job)." (Tr. 463). However, as referenced above, Nurse Heather's opinions were internally inconsistent and frequently at odds with the record (such as concerning repeated episodes of decompensation of extended duration).

Ultimately, Plaintiff argues that this case should be remanded based upon the ALJ's failure to sufficiently articulate the reasons for her decision, as well as for her failure to discuss the two JFS documents prepared by Nurse Heather. Plaintiff contends that the ALJ's analysis is not "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." See *Gayheart v. Com'r*, 710 F.3d 365, 376 (6th Cir. 2013). The Court disagrees. The ALJ expressly stated that Nurse Heather's

12

opinions were entitled to "no weight" and why. She found the opinions to be inconsistent with clinical records, and explained that she was crediting the more persuasive and consistent opinions of other acceptable medical sources. While the Court has pointed out additional examples of inconsistencies in Nurse Heather's opinions, the ALJ was not required to articulate in detail every portion of Nurse Heather's opinion that she found to be inconsistent. See SSR 06-03p (distinguishing between what "an adjudicator must consider and what the adjudicator must explain."). Nor was the ALJ required to discuss the three pages of JFS documents. Though only one is dated, Plaintiff represents they were completed within a few weeks of the November 2011 assessment. The lack of explicit discussion is not cause for remand.[6] *See e.g.*, SSR 96-2p ("Adjudicators must use judgment…in determining whether, and the extent to which, it is necessary to address separately each medical opinion from a single source." 1996 WL 374188 at *2; *see also Boseley v. Com'r of Soc. Sec.*, 397 Fed. Apx. 195, 199 (6th Cir. 2010)(holding that ALJ is not required to discuss each piece of data or evidence).

Plaintiff contends that the ALJ's explicit references to certain "inconsistencies" do not reflect actual inconsistencies. For example, he asserts that improvement with medication is not necessarily inconsistent with disability. Likewise, he complains that someone who is "stable" might still be disabled. But the ALJ's alternate interpretation of the same evidence was clearly reasonable. Multiple mental examinations and clinical records in 2010 reflected that Plaintiff's medications were helping, and that he had a stable mood, clearer thinking, and was alert and oriented. (Tr. 26-27, Tr. 429, 600, 657,

---

[6]One of the two JFS forms is little more than a medication list.

495).  Additional records reflect similar reports in 2011 (Tr. 27, 490, 493, 477, 645, 684). Although Plaintiff reported increased depression in one record dated December 2011, even in that record his thought process was noted to be only mildly slowed, his thought content was logical, he was cooperative, and his cognition was intact.  (Tr. 27, 677).

Plaintiff also asserts that Nurse Heather's opinions are consistent with a consulting examination report prepared by Trainee Kurt Brickner and reviewed by Stephen McConnell, PsyD, ABPP.  (Tr. 657-666).  The Court disagrees.  That report reflects that Plaintiff's difficulties in securing and maintaining employment are due, at least in part, to his criminal record and substance abuse, and not his mental illness.  (Tr. 659).  Like other records, the evaluation reflects Plaintiff's own report of significant improvement and stability on medication.  (Tr. 660).  Ultimately, the assessment concludes that "Mr. Linkhart has many vocational options" based on his aptitudes and interests.  (Tr. 665).  The report evaluated Plaintiff's current GAF as 55, with a higher score of 65 noted in the past year.  Both scores are consistent with only "moderate" limitations and are inconsistent with disability.  The evaluator further noted that some of Plaintiff's results indicated that he "may have been confused…or exaggerated psychological symptoms," and therefore warned that the more extreme score results were to be interpreted with "extreme caution."  (Tr. 660-661).

In sum, the Court concludes that Plaintiff's records are susceptible to more than one reasonable interpretation.  Plaintiff argues forcefully that the records *could* be interpreted in a manner that is more consistent with Nurse Heather's disability opinions. However, the fact that the ALJ interpreted the records as inconsistent with Nurse Heather's opinions and as more consistent with a non-disability finding was not error. "The findings of the Commissioner are not subject to reversal merely because there

exists in the record substantial evidence to support a different conclusion….This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan v. Com'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006)(additional citations omitted).

### 2. Dr. Firmin and Dr. Goldsmith; Alleged *Blakley* Error

In addition to the ALJ's rejection of Nurse Heather's opinions, Plaintiff argues that the ALJ erred by giving the opinions of two consulting physicians too much weight. In general, the opinions of a consulting physician who has examined the plaintiff will be given more weight than those of a non-examining consultant. Based upon that general principle, Plaintiff asserts that the ALJ should have given Nurse Heather's opinions greater weight than she gave to the consulting opinions.

Consulting psychologist Dr. Firmin examined Plaintiff in April 2010, diagnosing bipolar disorder, polysubstance abuse, and personality disorder. The ALJ discussed Dr. Firmin's examination findings in great detail. (Tr. 28-29). She gave Dr. Firmin's opinions "great weight based on the consistency with the overall record as well as with his examination of the claimant." (Tr. 29). The ALJ also stated that, in contrast to Nurse Heather's opinions, she was giving "more weight to the opinion of Dr. Bruce Goldsmith, PhD, who evaluated the claimant for the state agency." (Tr. 31). Dr. Goldsmith's May 2010 opinions were consistent with the April 2010 opinions of Dr. Firmin. (*Id.*).

Plaintiff argues that giving weight to either of these consultants was error, because Dr. Firmin did not review the entire psychological treatment record, including 10 pages of MHRC treatment notes as of the date of Dr. Firmin's report. Citing *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 408-409 (6th Cir. 2009), in which the

15

court reversed on grounds that the state non-examining sources did not review "much of the over 300 pages of medical treatment …by Blakley's treating sources," Plaintiff argues that the ALJ's reliance on both Dr. Firmin and Dr. Goldsmith requires a similar reversal here. During the months that elapsed between Dr. Firmin's examination and the hearing date, Plaintiff asserts that 248 pages were added to the record.[7]

*Blakley* does not support remand in any case in which an ALJ has relied upon consultants who were unable to review a complete record. Rather, the Sixth Circuit held that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." *Blakley*, 581 F.3d at 409 (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). The appellate court reversed not because of the quantity of evidence that was not reviewed by the consulting physician, but because the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Id.*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)). Experience teaches that in many if not most cases, some portion of the medical record will be generated after the consulting physician's review, and therefore not be included within the purview of the consultant's opinion. *Blakley* holds that an ALJ may credit the opinion of even a non-examining consultant who has failed to review a complete record, so long as he or she acknowledges that fact and articulates valid reasons for doing so. And even in cases in which an ALJ credits the incomplete consulting opinion and fails to provide sufficient

---

[7]The Court cannot help but note that, in addition to the references made by the ALJ to evidence of Plaintiff's improvement during this period, multiple MHRC records state nothing more than "Client No Show/Cancelled." (*See e.g.*, Tr. 328, 334, 336, 338, 342, 500, 501, 508, 511, 528, 552, 572, 576, 578, 595).

reasons for doing so, the ALJ's opinion *still* may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis*.

In this case, the ALJ committed no error under *Blakley*. She clearly considered the MHRC records generated after Dr. Firmin's April 2010 report up through the date that the record closed, shortly after the November 2011 hearing. In fact, she specifically discussed many key records, including Plaintiff's reports of significant improvement in the stability of his moods, and decrease in symptoms, in records dated June and October 2011. She also discussed Nurse Heather's clinical records and November 2011 assessment. (Tr. 28-31). By discussing the precise records that Plaintiff complains were not reviewed by the consulting physicians, and declaring that the consulting opinions were more consistent "with the overall record," (Tr. 29; see also Tr. 31), the ALJ adequately complied with *Blakley*.

Plaintiff alternatively argues that there is some evidence that his mental condition deteriorated prior to the hearing. However, Plaintiff concedes that the record contains conflicting evidence on that score. "While the record does reflect that at times plaintiff's mental condition did improve with treatment…there were episodes when plaintiff's symptoms increased – in July, September, and October of 2011." (Doc. 16 at 1-2). The hearing was held in November 2011. As with the other instances in which Plaintiff's interpretation differs from that of the ALJ, the Court finds no reversible error, because the ALJ's interpretation was clearly reasonable, was within the "zone of choice" and is supported by substantial evidence in the record as a whole.

### III. Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT:**

17

1. Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and is therefore **AFFIRMED;**

2. As no other matters remain pending, this case shall be **CLOSED.**

                                                *s/ Stephanie K. Bowman*
                                                Stephanie K. Bowman
                                                United States Magistrate Judge